Mary Anne HONEYCUTT and Gene Austin Honeycutt, Appellants,

v.

Callan M. BILLINGSLEY, Appellee.

Callan M. Billingsley, Cross–Appellant,

v.

Mary Anne Honeycutt and Gene Austin Honeycutt and Carroll Motors, Cross–Appellees.

No. 01–95–01099–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 8, 1999.

Rehearing Overruled May 20, 1999.

Gary L. McConnell, Horseshoe Bay, for Appellant.

Callan M. Billingsley, Boerne, Philip S. Gordon, Houston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices HEDGES and ANDELL.

## OPINION ON REHEARING

**MICHAEL H. SCHNEIDER, Chief Justice.**

The central issue in this case is the effect of a referral agreement on a prior contingency fee agreement for legal services. Specifically, does the subsequent referral agreement extinguish, either by way of novation or accord and satisfaction, the rights and obligations created by the previous contingency fee agreement. Appellants, Mary Anne and Gene Honeycutt (the Honeycutts), attack a judgment entered in favor of appellee, Callan M. Billingsley (Billingsley), after a jury awarded Billingsley damages arising out of the breach of a contingency fee agreement with the Honeycutts. Billingsley, as cross-appellant, also appeals from the portion of the judgment that granted a directed verdict on his claims against cross-appellee, Carroll Motor Company (Carroll Motors). On reconsideration, we deny the Honeycutts' motion for rehearing, grant Billingsley's motion for rehearing, withdraw all previous opinions, and issue this opinion in its stead.

## I. FACTS

### A. The initial contingency fee agreement with Billingsley

On February 2, 1990, Mary Anne Honeycutt was seriously injured when her car was struck by an automobile driven by 90-year-old Clarence Patterson. Carroll Motors owned the car driven by Patterson and had allowed Patterson to drive it.

Mary Anne sought legal assistance from Billingsley, an attorney who had represented Mary Anne and her husband, Gene, on other legal matters. Billingsley had some experience as a personal injury defense lawyer, although at the time, his practice focused on real estate, banking, and bankruptcy law. On February 7, 1990, Mary Anne orally agreed that Billingsley would represent her in her claims against Patterson and Carroll Motors. On that same date, Billingsley sent demand letters to Patterson and Carroll Motors notifying them that he represented Mary Anne, and that he had a contingent fee interest in her claim.

On June 8, 1990, Mary Anne, without Gene being a party, signed a contingent fee agreement with Billingsley. The agreement authorized Billingsley to (1) file and prosecute a lawsuit to judgment, and (2) negotiate a settlement with Patterson and Carroll Motors. The terms of the agreement provided that:

(a) Billingsley was to make no settlement without Mary Anne's approval;

(b) Mary Anne was to make no settlement without Billingsley's consent; and

(c) in consideration for services rendered, and to be rendered to Mary Anne, she granted, sold, assigned, and conveyed as Billingsley's compensation, an undivided interest in her claim as follows: (1) 25% if a settlement was made before suit was filed; or (2) 40% if a collection or settlement was made after suit was filed.

Although Mary Anne's husband, Gene, did not sign the contingency fee agreement, on September 14, 1990, Billingsley filed suit on behalf of both Mary Anne and Gene. Sometime thereafter, Patterson's insurance carrier tendered its policy limits.

After discussing the matter with Billingsley, Mary Anne agreed to settle her claim against Patterson for the $20,000 policy limits. Mary Anne was the only participant in the settlement with Patterson because the $20,000 policy limits were not sufficient to cover both her claims and Gene's derivative loss of consortium claims. Furthermore, the insurance company did not insist that Gene release any claims that he might have against Patterson.

Billingsley continued working on the lawsuit by conducting pretrial discovery. Gene and Mary Anne both helped prepare responses to interrogatories. Although most of his conversations were with Mary Anne, Billingsley talked and worked with Gene on several occasions. After Mary Anne underwent surgery, Billingsley felt that the case was becoming too complex and required an attorney who specialized in personal injury trial law.

### B. The referral to Burridge & Jensen

On April 24, 1991, in a telephone conference with Mary Anne, Billingsley recommended that the case be referred to Brian Jensen, who was board certified in personal injury trial law. Billingsley testified that Mary Ann had no problem with the referral "so long as her fee did not go up."

Billingsley prepared a referral agreement and mailed it to Mary Anne and Gene. In addition to Billingsley and the Honeycutts, Jensen's law firm, Burridge & Jensen, was also a party to the agreement.[1] The referral agreement provided as follows:

> This Agreement, entered into this 12th day of June, 1991, by CALLAN M. BILLINGSLEY ("Billingsley"), and LAW OFFICE OF BURRIDGE AND JENSEN ("Burridge and Jensen") and MARY ANNE HONEYCUTT and GENE AUSTIN HONEYCUTT (collectively "Honeycutt").

WHEREAS, Honeycutt has employed Billingsley to represent them in their claim or claims for damages arising out of an automobile accident in which Mary Anne Honeycutt was involved on or about Feb. 2, 1990;

WHEREAS, Billingsley desires to refer Honeycutt's claim or claims for damages arising out of such accident to Burridge & Jensen, who are specialists in the area of personal injury and insurance law;

WHEREAS, Honeycutt desires that Billingsley refer any and all such claims to Burridge and Jensen, and

WHEREAS, the parties desire to set forth in writing the terms of such referral.

NOW, THEREFORE, in consideration of the premises, covenants and conditions contained herein, the parties agree as follows.

Billingsley shall and does hereby refer any and all claims of Honeycutt arising out of the automobile accident in which Mary Ann Honeycutt was involved on or about Feb. 2, 1990, including, but not limited to claims against CLARENCE B. PATTERSON, CARROLL MOTOR COMPANY, their respective insurers, Honeycutt's insurers, and any and all other persons who may be liable to pay Honeycutt, jointly and severally, any sum of money for damages arising out of such accident to Burridge and Jensen. Burridge and Jensen agree to abide by the fee agreement entered into by and between Billingsley and Honeycutt, a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by reference. In consideration for Billingsley referring Honeycutt's claims to Burridge and Jensen, and in consideration for Burridge and Jensen handling the prosecution of such claims on behalf of Honeycutt, Burridge & Jensen and Billingsley

---

1. Although Gene was not a signatory to the original contingency fee agreement, he was made a party to the referral agreement. Billingsley testified that he did this because he wanted to get Gene signed up on the contingency fee agreement.

agree that they will divide any and all attorney's fees, whether such attorney's fees are recovered by settlement, judgment, or otherwise, on a 60% (Burridge & Jensen) 40% (Billingsley) basis. (By way of example, in the event Honeycutts recover the sum of $1,000.00 and reimbursable expenses total $100, Honeycutt would receive $540.00, Burridge & Jensen would receive $216.00 and Billingsley would receive $144.00).

Honeycutt consents to this Referral Agreement as evidenced by their signatures below.

This referral agreement was signed on June 12, 1991. On June 27, 1991, Billingsley withdrew as attorney of record in the trial court, and Jensen was substituted as attorney of record. Like the referral agreement, the motion to withdraw and substitute counsel was signed by Billingsley, Jensen, and the Honeycutts. Between that time and December 1991, at least one deposition was held in Billingsley's office, where he was available for assistance. The Honeycutts admitted that Mary Anne discussed the status of the case with Billingsley even after the referral agreement was signed.

## C. The dispute with Jensen and subsequent hiring of McConnell

On May 22, 1992, Jensen filed a motion to withdraw as the Honeycutts' counsel. The testimony differs as to what led to the split between Jensen and the Honeycutts. Jensen testified that he discussed a $150,000 settlement demand in December 1991, and that he got Mary Anne's approval to make such a demand. Mary Anne contends that the only settlement demand she approved was for $260,000. Whatever the demand was, Carroll Motors countered with an $8,000 offer. On February 4, 1992, Jensen shared this counteroffer with Billingsley; this is the last time that the record shows that Billingsley was contacted personally about evaluating or contributing to the prosecution of the Honeycutts' claims against Carroll Motors.

Later in February 1992, Jensen told Mary Anne about the settlement impasse. Mary Anne, who was "infuriated," sent a letter to Jensen on March 17, 1992, stating that his $150,000 demand was "unacceptable," and that she wanted a $260,000 demand made. When he received her letter, Jensen immediately called Mary Anne. Mary Anne testified that Jensen refused to submit her suggested demand, a fact Jensen denies. Mary Anne also testified that when she threatened to find another attorney who would make the demand, Jensen told her to go ahead and get another attorney.

On May 22, 1992, Jensen filed a motion to withdraw and to substitute Gary L. McConnell as attorney of record for the Honeycutts. Jensen did not notify Billingsley that McConnell had been substituted as new counsel, and there was no referral agreement between Jensen and McConnell. The Honeycutts admitted in their responses to requests for admissions they never notified Billingsley they had hired McConnell, nor did they inform Billingsley they wanted his services. On December 3, 1992, Billingsley became aware that McConnell had been substituted as attorney of record when McConnell subpoenaed him to testify in the Honeycutts' case against Carroll Motors.

## D. Billingsley's intervention

On December 4, 1992, Billingsley filed a plea in intervention claiming a 40% interest in the Honeycutts' claims under the original contingency fee agreement and reimbursement of his litigation expenses. In the alternative, he sued under a quantum meruit theory for the reasonable value of the services he rendered to the Honeycutts. The trial court severed the intervention from the tort suit against Carroll Motors. Shortly before trial, McConnell negotiated a settlement with Carroll Motors for $162,500, from which McConnell was paid $47,500.

### E. Jury findings in favor of Billingsley

Billingsley's intervention went to trial in February 1995. The jury found that:

(1) the transactions in question about the compensation to be paid to Billingsley were fair to Mary Anne;

(2) Mary Anne failed to comply with the agreements to compensate Billingsley;

(3) Mary Anne's failure to comply was not excused by either novation or accord and satisfaction;

(4) Gene had entered into an attorney/client agreement with Billingsley;

(5) The agreement between Gene and Billingsley was fair;

(6) Gene failed to comply with the agreement;

(7) Gene's failure to comply with the agreement was not excused by either novation or accord and satisfaction; and

(8) Billingsley suffered $13,000 in damages as to Mary Anne and $13,000 in damages as to Gene.[2]

### F. Directed verdict on Billingsley's claims against Carroll Motors

Although Billingsley ultimately prevailed on his claims against the Honeycutts, after the close of the evidence, but before submitting the case to the jury, the trial court granted a directed verdict on Billingsley's claims against Carroll Motors.

### G. This appeal

The Honeycutts filed this appeal, contending the trial court erred by entering judgment for Billingsley based on the jury verdict. In a cross-appeal, Billingsley contends the trial court erred by granting a directed verdict in favor of Carroll Motors. We affirm in part and reverse and render in part.

## II. THE HONEYCUTTS' POINTS OF ERROR

### A. The Jury's Failure to Find Novation or Accord and Satisfaction

In points of error one, two, seven, and 10, the Honeycutts challenge both the legal and factual sufficiency supporting the jury's failure to find that novation or accord and satisfaction excused the Honeycutts' failure to perform the terms of the contingency fee agreement.

■ A novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement. *See Hidalgo County v. Pate*, 443 S.W.2d 80, 89 (Tex. Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.). Therefore, only the new obligation may be enforced. *Priem v. Shires*, 697 S.W.2d 860, 864–65 (Tex.App.—Austin 1985, no writ). The elements of novation are: (1) a previous, valid obligation; (2) an agreement of the parties to a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract. *Mandell v. Hamman Oil and Ref. Co.*, 822 S.W.2d 153, 163 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

■ An "accord" of an accord and satisfaction is a new contract to discharge an existing obligation. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969); *Bueckner v. Hamel*, 886 S.W.2d

---

**2.** Though there is nothing in the record to indicate how the jury arrived at the $13,000 in damages, it is fair to conclude that the jury took the amount recovered by the Honeycutts through their settlement with Carroll Motors, calculated 40% of that sum for the amount of attorneys' fees due under the original contingency fee agreement, and then used that figure to calculate the sum Billingsley would have received under the terms of the referral agreement. Thus, it is likely the jury employed the following formula: $162,000 (total settlement) × .40 = $65,000 (attorney fees due under original contingency fee agreement) × .40 = $26,000 (Billingsley's portion of attorney's fees under the referral agreement). The $26,000 in total damages was then apparently split between Gene and Mary Anne evenly.

368, 372 (Tex.App.—Houston [1st Dist.] 1994, writ denied). "Satisfaction" is the performance of the new contract. *City of Houston v. First City*, 827 S.W.2d 462, 472 (Tex.App.—Houston [1st Dist.] 1992, writ denied). In the new contract: (1) the parties agree to discharge the existing obligation; (2) the parties agree that one party will perform and the other will accept something different from what each expected from the existing obligation; (3) the parties unmistakably communicate that the different performance will discharge the existing obligation; (4) the agreement to discharge the existing obligation is plain, definite, certain, clear, full, explicit, and not susceptible of any other interpretation; and (5) the parties' agreement must be accompanied by acts and declarations that the creditor is "bound to understand." *Jenkins*, 449 S.W.2d at 455.

■ An accord and satisfaction may work a novation. In an accord and satisfaction, it is generally the performance of the new obligation, and not the obligation itself, that is considered a novation. *See DoAll Dallas Co. v. Trinity Nat'l Bank*, 498 S.W.2d 396, 400 (Tex.Civ.App.—Texarkana 1973, writ ref'd n.r.e.). An agreement that modifies an existing obligation will result in both an accord and satisfaction and a novation if the parties intended to extinguish the existing obligation. *Priem*, 697 S.W.2d at 865.

Thus, the common requirement under both novation and accord and satisfaction is that the new contract must extinguish or excuse the duty to perform the existing obligation. Under either theory, the parties must intend to release the other from a prior obligation and to assume a new one. Because the same element of both defenses (*i.e.*, whether there was an extinguishment of prior obligations) is at issue in this case, we will discuss novation and accord and satisfaction together.

■ Novation is an affirmative defense. *Mandell*, 822 S.W.2d at 163. Therefore, the burden of proof "is on the party asserting it," which, in this case, was the Honeycutts. *See Starcrest Trust v. Berry*, 926 S.W.2d 343, 353 (Tex.App.—Austin 1996, no writ); *see also Schwab v. Schlumberger Well Surveying Corp.*, 145 Tex. 379, 198 S.W.2d 79, 82 (1946). Accord and satisfaction is also an affirmative defense, and, again, the Honeycutts had the burden of proof. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979).

### 1. Legal Sufficiency

■ When the party with the burden of proof challenges the legal sufficiency to support the jury's failure to find in its favor, it must show that no evidence supports ·the failure to find and the evidence establishes the desired finding as a matter of law. *Ramsey v. Lucky Stores, Inc.*, 853 S.W.2d 623, 632 (Tex.App.—Houston [1st Dist.] 1992, writ denied). A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Neese v. Dietz*, 845 S.W.2d 311, 313 (Tex.App.—Houston [1st Dist.] 1992, writ denied). First, we must examine the record for evidence that supports the jury's findings, while *ignoring* all evidence to the contrary. *Sterner*, 767 S.W.2d at 690; *Neese*, 845 S.W.2d at 313. Second, if there is no evidence to support the fact finder's answer, then we must examine the entire record to determine whether the contrary proposition was established as a matter of law. *Sterner*, 767 S.W.2d at 690.

■ We first look at the evidence that supports the jury's refusal to find novation or accord and satisfaction. *See Sterner*, 767 S.W.2d at 690. Specifically, we examine the record to see if there is any evidence to show that parties did not intend for the referral agreement to completely extinguish the obligations created by the original contingency fee agreement.

We begin by looking at the language of the referral agreement. There is no express provision in the referral agreement stating that the contingency fee agreement

is extinguished. Similarly, there is no express provision whereby Billingsley renounces his 40% interest in any settlement. Billingsley is the only attorney ever given an express assignment of the Honeycutts' claims, and there is no assignment of Billingsley's interest to Burridge & Jensen. Instead of extinguishing Billingsley's interest in the contingency fee agreement, the referral agreement refers the Honeycutts' claims to Burridge & Jensen, and, in return for Jensen performing Billingsley's obligations under the contingency fee agreement, Billingsley agrees to give Burridge and Jensen 60% of the fees to which Billingsley would otherwise be entitled. The referral agreement, on its face, does not purport to extinguish Billingsley's interest in the tort suit, but merely provides for a substituted performance by Burridge & Jensen in return for a share of Billingsley's fee.

Other evidence that the referral agreement does not extinguish the contingency fee agreement is the fact that the referral agreement incorporates the contingency fee agreement and states that Burridge & Jensen are to abide by the contingency fee agreement. In fact, the only modification the referral agreement made to the contingency fee agreement was to set up a formula whereby Burridge & Jensen would share in Billingsley's interest in the Honeycutts' claims.

Finally, Billingsley testified that the referral agreement was not intended to discharge the contingency fee agreement. He explained that the referral agreement was never meant to be an alternative agreement that would completely replace the contingency fee agreement. Instead, he testified that the referral agreement reaffirmed the contingency fee agreement when it expressly required Burridge & Jensen to abide by the contingency fee agreement.

Accordingly, we hold that there is some evidence to support the jury's refusal to find a novation or an accord and satisfaction. Thus, we need not address prong

two of the legal sufficiency analysis, *i.e.*, whether the Honeycutts conclusively established the existence of a novation or an accord and satisfaction. The evidence is legally sufficient to support the jury's refusal to find a novation or an accord and satisfaction.

### 2. Factual Sufficiency

■ If a party is attacking a jury finding concerning an issue upon which he had the burden of proof, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.—Corpus Christi 1990, writ denied); *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied). In reviewing a challenge that the jury finding is against the great weight and preponderance of the evidence, we must examine the record to determine if there is some evidence to support the finding, and then determine, in light of the entire record, whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Hollander v. Capon*, 853 S.W.2d 723, 726 (Tex.App.—Houston [1st Dist.] 1993, writ denied). We cannot reverse merely because we conclude that the evidence preponderates toward an affirmative answer, *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988), nor can we substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Hollander*, 853 S.W.2d at 726.

■ The Honeycutts contend that the evidence is factually insufficient to support the jury's negative findings on the issues of novation and accord and satisfaction because the referral agreement delegated all of Billingsley's obligations to perform legal services to Burridge & Jensen. The Honeycutts reason that because Billingsley had no further duties under the contingen-

cy fee agreement, he also had no right to recover payment under the agreement. We disagree.

As we stated in our previous legal sufficiency discussion, the referral agreement does not purport to extinguish any of the rights of the parties to the agreement. Instead, it merely delegates Billingsley's duty to perform legal services for the Honeycutt's to Jensen. In return, Jensen and Billingsley agree to split any fees earned under the original contingency fee agreement on a 60/40 basis.

Thus, the issue presented is whether a delegation of duties under a contract works to effect a novation or an accord. We hold that, under these circumstances, it does not. In *Bolin Oil Co. v. Staples,* 496 S.W.2d 167, 175–76 (Tex.Civ.App.— Fort Worth 1973, writ ref'd n.r.e.), Staples Oil Company (Staples) and its partners hired Bolin Oil (Bolin) company to drill an oil well for them. Bolin attempted to "farm out" their duties under the contract to Leach Construction Company (Leach). Leach failed to adequately perform the delegated duties. The trial court held that, regardless of the assignment of duties to Leach and the fact that Leach may have been an independent contractor, Bolin remained liable to Staples. *Id.*

The *Bolin* court relied on, and we also look to, the Restatement of Contracts to support our holding. Section 318 of the Second Restatement of the Law of Contracts provides in part:

> (1) An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise.
>
> \* \* \* \*
>
> (3) Unless the obligee agrees otherwise, neither delegation of performance nor a contract to assume the duty made with the obligor by the person delegated dis-

charges any duty or liability of the delegating obligor.

RESTATEMENT (SECOND) of CONTRACTS § 318 (1981).

Therefore, unless the Honeycutts agreed to discharge Billingsley from his obligation by way of the referral agreement, the delegation of his duties to Jensen did not affect his liability under the original contingency fee agreement. As we have already stated, there is nothing in the contingency fee agreement to indicate that the Honeycutts intended to release Billingsley from all liability. In fact, the record indicates that the Honeycutts continued to look to Billingsley even after the referral was signed. At least one deposition was taken at Billingsley's office, and the Honeycutts talked with him about the case even after the referral agreement was signed. These actions, along with the absence of any language releasing Billingsley from liability in the referral agreement, indicate that the Honeycutts did not intend for the referral agreement to discharge Billingsley's liabilities under the original contract. The Honeycutts merely agreed to accept substituted performance of Billingsley's duties by Jensen. Thus, because the referral did not serve to release Billingsley from liability, it also did not release the Honeycutts from their duty to pay Billingsley.[3]

We are not holding that a delegation of duties will never work a novation of a previous agreement. Again, the Second Restatement of the Law of Contracts addresses this issue as follows:

> (1) The legal effect of a repudiation by an assignor of his duty to the obligor of the assigned right is not limited by the fact that the assignee is a competent person and has promised to perform the duty.

---

**3.** Under the law on delegation of duties, once Jensen failed to perform, Billingsley again became obligated to either provide the legal services himself or to delegate those duties to another attorney. The Honeycutts did not contend either at trial or on appeal that Billingsley failed to perform the duties; instead, they did not seek performance from Billingsley, but hired Gary McConnell.

(2) If the obligor, with knowledge of such a repudiation, accepts any performance from the assignee without reserving his rights against the assignor, a novation arises by which the duty of the assignor is discharged and a similar duty of the assignee is substituted.

RESTATEMENT (SECOND) of CONTRACTS § 329 (1981).

The key to this section, is that before there can be a novation, there must be a repudiation of liability by Billingsley, followed by acceptance of Jensen's performance by the Honeycutts, despite knowledge of Billingsley's repudiation.[4]

However, there is nothing in either the record or the language of the referral agreement to show that Billingsley intended to repudiate his liability to the Honeycutts; he simply assigned his duties to Jensen and agreed to split the fee. Absent a repudiation by Billingsley, and an acceptance of that repudiation by the Honeycutts, there is no novation or accord.

Accordingly, the Honeycutts' contention that Jensen's substituted performance alone is evidence of a novation or an accord is meritless. After reviewing the entire record, we find insufficient evidence to show either (1) an intent by the Honeycutts to release Billingsley or (2) a repudiation by Billingsley of his rights and duties under the original fee agreement. Therefore, the jury's failure to find a novation or an accord and satisfaction is not against the great weight and preponderance of the evidence.

4. The Restatement provides the following illustration of this principle:

1. A is under a contract with B to build a house for $10,000. A assigns his rights under the contract to C, who agrees to assume A's duty to build the house. B is informed of the assignment and assumption, and makes no objection as C partly performs. A remains bound to B as surety for C's performance.
2. In Illustration 1, A withdraws from the construction business and informs B that he takes no further responsibility for C's performance. B makes no objection

We overrule points of error one, two, seven, and ten.

## B. Sufficiency of the Evidence on Remaining Jury Issues

In their remaining points of error, the Honeycutts contend the evidence was legally and factually insufficient to support jury findings upon which Billingsley had the burden of proof. We employ the following standards of review. First, in a legal sufficiency point, we consider only the evidence and inferences, which, when viewed in their most favorable light, tend to support the finding and disregard all evidence and inferences to the contrary. *Sterner*, 767 S.W.2d at 690. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). Second, in a factual sufficiency review, we consider all the evidence, and set aside the verdict only if the evidence or the findings is so against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176; *Hollander*, 853 S.W.2d at 726.

### 1. Attorney–Client Agreement Between Billingsley and Gene Honeycutt

In points of error three and eight, the Honeycutts argue that the evidence was legally and factually insufficient to prove there was an attorney-client relationship between Gene Honeycutt and Billingsley.[5] We disagree.

and C proceeds with the work. A is discharged.
RESTATEMENT (SECOND) of CONTRACTS § 329 cmt. b., illus. 1, 2 (1981).

5. Jury question number four asked the jury the following question regarding Gene Honeycutt's relationship with Billingsley:

Did GENE AUSTIN HONEYCUTT enter into an attorney client agreement with CALLAN M. BILLINGSLEY arising out of MARY ANNE HONEYCUTT's automobile wreck with Clarence Patterson on or about February 2, 1990?
Answer: Yes

The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for the client. *Byrd v. Woodruff*, 891 S.W.2d 689, 700 (Tex.App.—Dallas 1994, writ dism'd by agreement); *see also Stern v. Wonzer*, 846 S.W.2d 939, 947 (Tex.App.—Houston [1st Dist.] 1993, no writ). The relationship may be expressly created through a contract or it may be implied from the actions of the parties. *Yaklin v. Glusing, Sharpe & Krueger*, 875 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1994, no writ); *Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 265 (Tex.App.—Corpus Christi 1991, writ denied).

Here, the record shows that Gene Honeycutt signed neither his wife's contingency fee agreement with Billingsley, nor a separate contingency fee agreement with Billingsley. However, Gene Honeycutt signed the referral agreement, which defines "Honeycutt" as Mary Honeycutt and Gene Honeycutt collectively. The referral agreement states that "Honeycutt has employed Billingsley to represent them in their claim or claims arising out of an automobile accident in which Mary Honeycutt was involved...." That agreement also provides that Burridge & Jensen is to abide by the "fee agreement entered into by and between Billingsley and Honeycutt." Furthermore, Billingsley testified that he asked Gene Honeycutt to sign the referral agreement so that he would be bound by the contingency fee agreement.

We conclude that there is legally and factually sufficient evidence to support the jury's finding that Gene Honeycutt and Billingsley had entered into an attorney-client relationship.

We overrule points of error three and eight.

### 2. Attorney's Fees

 In points of error four and five, the Honeycutts contend the trial court erred in awarding $9000 in attorney's fees to Billingsley because he did not plead and prove compliance with Tex. Civ. Prac. & Rem.Code Ann. § 38.002 (Vernon 1997).

 To recover attorney's fees on an oral or written contract, the claimant must be represented by an attorney, he must present the claim to the opposing party or to his duty authorized agent, and the payment of the just amount owed must not have been tendered within 30 days after the claim was presented. Tex. Civ. Prac. & Rem.Code Ann. § 38.002 (Vernon 1986). A claimant must plead and prove presentment of his claim. *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex.1981); *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 719 (Tex.App.—Houston [1st Dist.] 1988, writ denied). No form of presentment is prescribed, and it may be oral or written; however, the assertion of a debt or claim and a request for compliance must be made to the opposing party. *Jones*, 614 S.W.2d at 100; *Adams*, 754 S.W.2d at 719. The purpose of this requirement is to give the opposing party an opportunity to pay the claim within 30 days to avoid liability for attorney's fees, which are assessed as a type of penalty for the refusal to pay a just claim. *Jones*, 614 S.W.2d at 100; *Adams*, 754 S.W.2d at 719.

Here, Billingsley testified that he represented himself in this action, and that on December 3, 1992, he spoke with Gary McConnell, the Honeycutts' third lawyer, regarding the Honeycutts' lawsuit. During that conversation, Billingsley explained to McConnell that he had an interest in the Honeycutts' lawsuit, and, if the matter was not resolved, he would intervene in the Honeycutt–Carroll Motors lawsuit. Billingsley then explained that when he did not receive payment for his services within 30 days, he intervened in the Honeycutt lawsuit. Because the oral presentment of a contract claim is sufficient to support an award of attorney's fees, we hold that Billingsley's testimony is sufficient to show compliance with section 38.002.

We overrule points of error four and five.

### 3. Fairness of the Contingency Fee Agreement

 In points of error six and nine, the Honeycutts argue that the evidence supporting the jury's finding that the contingency fee agreement was fair to Mary Anne or Gene is legally and factually insufficient.[6] We disagree.

 A contract entered into between any attorney and client after the attorney-client relationship is established is presumed unfair, and the attorney has the burden of showing the fairness and reasonableness of the agreement. *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1964); *Cole v. McCanlies*, 620 S.W.2d 713, 715 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). In this case, Billingsley and the Honeycutts had established a four-month-long attorney-client relationship before they entered into a written contract. Therefore, it was Billingsley's burden to show the fairness and reasonableness of the agreement. *See Archer*, 390 S.W.2d at 739.

At trial, Billingsley explained that the contingency fee agreement provided him a 40% interest in the Honeycutts' claims. Brian Jensen, a board certified personal injury trial lawyer with 17 years of legal experience, testified that personal injury cases are almost exclusively handled on a contingency fee basis, and that the most common fee claimed by an attorney is 40%.

The Honeycutts also contend the agreement was unfair because Mary Anne claimed that when she entered the contingency fee contract, Billingsley admitted he was not qualified to handle a personal injury case, and that he would most likely refer the case to a more experienced personal injury attorney. However, Billingsley testified that he never told Mary Anne

that he was not qualified to handle the case or that he intended to refer it to another attorney. He explained that his decision to refer the case to another lawyer was made sometime after the parties entered into the contingency fee agreement.

After examining the record and both the contingency fee agreement and the referral agreement, we find there is legally and factually sufficient evidence to support the jury's findings that the agreements were fair to the Honeycutts.

We overrule points of error six and nine.

### 4. Sufficiency of the Evidence to Support Damages Assessed

 In point of error 11, the Honeycutts contend the jury's award of $13,000 to Billingsley for Gene Honeycutt's breach of the referral agreement was clearly excessive.

Jury question number eight asked the jurors "what sum of money, if any, if paid now in cash, would fairly and reasonably compensate CALLAN M. BILLINGSLEY for his damages, if any, that resulted for such failure to comply [with the contingency fee agreement.]" The jury answered that Billingsley should be awarded $13,000 for Mary Anne's failure to comply with the contingency fee agreement and $13,000 for Gene's failure to comply with the contingency fee agreement. The jury, therefore, found that Billingsley was damaged in the total amount of $26,000. As explained in footnote 2 of this opinion, $26,000 is the amount that Billingsley would have received under the terms of the contingency fee agreement and the subsequent referral agreement. Exactly half of this amount was allocated to Gene's breach of contract and half to Mary Anne's breach of contract.

---

6. The following questions were submitted on the issue of fairness:
 Was the transaction in question concerning the compensation to be paid to CALLAN M. BILLINGSLEY fair to MARY ANNE HONEYCUTT?

 Answer: Yes
 Was such agreement fair to GENE AUSTIN HONEYCUTT?
 Answer: Yes

Based on this evidence, we conclude there is legally and factually sufficient evidence to support the jury's finding that Gene's breach damaged Billingsley in the amount of $13,000.

We overrule point of error 11.

Because Billingsley has prevailed on all of the Honeycutts' points of error one through 11, we need not address points of error 12 and 13, in which the Honeycutts challenge the alternative theory of recovery raised by Billingsley during trial.

### III. BILLINGSLEY'S CROSS-APPEAL AGAINST CARROLL MOTORS

**A. Facts relevant to Billingsley's cross-appeal**

In his plea in intervention, Billingsley sought to hold the Honeycutts and Carroll Motors jointly and severally liable for: (1) the amounts due him under the original contingency fee agreement, and (2) his attorney's fees in prosecuting this suit. Billingsley's theory of liability against Carroll Motors was that Carroll Motors, with actual knowledge of Billingsley's interest in the Honeycutts' lawsuit, nonetheless paid the entire settlement amount to the Honeycutts, thereby depriving Billingsley of the fees to which he was entitled by the contingency fee agreement.

After a pretrial hearing, the trial court made the following findings of fact, which it later incorporated in its final judgment:

1. Mary Anne Honeycutt agreed to assign an interest in her claim against Carroll Motor Company, Inc., arising out of her automobile wreck with Clarence Patterson on or about February 2, 1990, to Callan M. Billingsley.

2. Mary Anne Honeycutt failed to pay any of the proceeds of her settlement with Carroll Motor Company, Inc., to Callan M. Billingsley.

3. Carroll Motor Company, Inc., had actual knowledge of Callan Billingsley's claim that Mary Anne Honeycutt had assigned to Callan Billingsley an interest in her claim against Carroll Motor Company, Inc., arising out of the automobile wreck with Clarence Patterson on or about February 2, 1990, before it paid any of the proceeds of its settlement with Mary Anne Honeycutt to Mary Anne Honeycutt.

4. Carroll Motor Company, Inc., had actual knowledge of Callan M. Billingsley's claim that Gene Austin Honeycutt had assigned to Callan M. Billingsley an interest in his claim against Carroll Motor Company, Inc. arising out of the automobile wreck with Clarence Patterson on or about February 2, 1990, before it paid any of the proceeds of its settlement with Gene Austin Honeycutt to Gene Austin Honeycutt.

5. Carroll Motor Company, Inc., paid no money to Callan Billingsley when it paid the proceeds of the settlement of Mary Anne Honeycutt's claim against it to Mary Anne Honeycutt and Gary McConnell.

6. Carroll Motor Company, Inc., paid no money to Callan Billingsley when it paid the proceeds of the settlement of Gene Austin Honeycutt's claim against it to Gene Austin Honeycutt and Gary McConnell.

7. Callan M. Billingsley presented his claim of an interest in the claims of Mary Anne Honeycutt and Gene Austin Honeycutt against Carroll Motor Company, Inc., to Carroll Motor Company, Inc., or to an authorized agent of Carroll Motor Company, Inc., more than thirty (30) days elapsed, Carroll Motor Company, Inc., neither tendered nor paid any claim to Callan M. Billingsley.

The trial court did not submit issues to the jury on Billingsley's claim against Carroll Motors because, in light of the above findings, there were no material fact issues to be determined. The parties have not alleged a point of error disputing or attacking the trial court's findings of fact, thus, the above-referenced facts are undisputed.

Despite the findings of fact, the trial court apparently concluded that Billingsley had no cause of action against Carroll Motors as a matter of law and granted Carroll Motors' motion for directed verdict.

## B. Liability of Carroll Motors

In his cross-appeal, Billingsley contends the trial court erred in granting a directed verdict for Carroll Motors. He asserts that, as a matter of law, his own motion for directed verdict should have been granted. Alternatively, he contends that fact issues were raised, and that his case against Carroll Motors should have been submitted to the jury.

A directed verdict is proper when the evidence conclusively proves the movant's right to judgment as a matter of law or negates the nonmovant's right to judgment. *Metzger v. Sebek,* 892 S.W.2d 20, 40 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

Thus, the issue to be determined is whether the trial court's findings of fact entitled Billingsley to a judgment against Carroll Motors as a matter of law. Carroll Motors asserts that because Billingsley's claims under the original contingency fee agreement were a derivative action of the Honeycutts' tort claims, once his intervention was severed from the main tort action and the case settled as between Carroll Motors and the Honeycutts, Billingsley could no longer pursue a cause of action against Carroll Motors. As authority, it cites *Dow Chemical v. Benton,* 163 Tex. 477, 357 S.W.2d 565, 567 (1962).

In *Dow Chemical,* the plaintiff's suit was dismissed because of the plaintiff's refusal to appear for a deposition. His attorney, who had been assigned an interest in the plaintiff's case, filed suit claiming an ownership interest in the plaintiff's case and seeking to proceed with the case in an effort to protect his own interest. The Texas Supreme Court held that the attorney could not make a recovery because his interest was derived from the plaintiff's claim, and the plaintiff had no further claim because the case had been dismissed. *Dow Chemical,* 357 S.W.2d at 567.

We agree that *Dow Chemical* stands for the general principle that a suit for attorney's fees is not *ordinarily* maintainable as a separate cause of action. However, an exception to that principle occurs when the client and the tort defendant attempt to effectuate a settlement that circumvents the attorney's interest in the lawsuit. In fact, *Dow Chemical* recognizes this exception in cases in which " . . . the client has attempted to satisfy financially his legal claim without compensating the attorney for his efforts in the case . . ." 357 S.W.2d at 568.

If a client, after having assigned an interest in the case to his attorney, attempts to compromise the entire case without the attorney's agreement, the attorney is not bound by the settlement. *Seiter v. Marschall,* 105 Tex. 205, 147 S.W. 226, 228 (1912); *Groves–Barnes Lumber Co. v. Freeman,* 33 S.W.2d 218, 219 (Tex. Civ.App.—Texarkana 1930, no writ). If the defendant in the underlying suit has notice of the attorney's interest, the defendant is liable to the attorney, even if he has already paid the client. *Galveston H. & S. Ry. Co. v. Ginther,* 96 Tex. 295, 72 S.W. 166, 167 (1903). "The position of the defendant was that of any other person paying a debt to the original creditor, instead of an assignee, whose rights were known." *Id.*

In this case, the Honeycutts and Carroll Motors settled the tort lawsuit without recognizing Billingsley's interest in the suit, even though both the Honeycutts and Carroll Motors were aware of such interest. Because Billingsley's interest in the lawsuit was not recognized by the settlement between the Honeycutts and Carroll Motors, he was entitled to prosecute the suit. As such, his action was not merely derivative of the Honeycutts' action.

Furthermore, the trial court's undisputed findings of fact show that Carroll Mo-

tors had actual knowledge of Billingsley's interest in the Honeycutt lawsuit. Thus, the record shows, as a matter of law, that Billingsley was entitled to recover from Carroll Motors.

Carroll Motors argues that the *Ginther* case, cited above, is distinguishable, because in that case, the plaintiff and defendant settled without recognizing the interest of the attorney of record. By contrast, in this case, Carroll Motors recognized the interest of Gary McConnell, but disregarded the interest of Billingsley because Billingsley was no longer attorney of record. We find this a distinction without a difference. Even though Billingsley was no longer attorney of record (he had withdrawn at the time the referral agreement was made), as determined by the jury and affirmed in this opinion, he nonetheless owned a valid interest in the lawsuit. Carroll Motors had actual knowledge of this interest, but chose to disregard it and make payment only to the Honeycutts and McConnell. The reasoning of *Ginther* applies equally in this case, even though Billingsley was no longer attorney of record.

## C. Actual Damages from Carroll Motors

▮ Having established that the undisputed facts show that Carroll Motors is liable to Billingsley; the only question remaining is the quantum of damages.

▮ In situations such as this, where a plaintiff and defendant, with knowledge that an attorney has been granted an interest in the suit, settle the case without recognizing the attorney's interest, the attorney has several choices: (1) he may prosecute the suit against the defendant in his own name or the plaintiff's name, prove liability and damages owed by the defendant to the plaintiff, and recover his proportionate share from the judgment; (2) he may sue the client for his share of the sum paid in settlement (as Billingsley has also done); or (3) he may ratify the settlement agreement between the plaintiff and defendant, without the necessity of proving liability and damages in the underlying tort suit, by seeking to recover only his proportionate share of the settlement funds. *See Gulf, C. & S.F. Ry. Co. v. Stubbs,* 166 S.W. 699, 700 (Tex.Civ.App.—San Antonio 1914, writ ref'd).

In this case, Billingsley pled to recover his percentage of the funds paid by Carroll Motors to the Honeycutts as a result of their settlement. Thus, he has effectively ratified the settlement by pleading for only a percentage of the settlement rather than proceeding with the tort lawsuit against Carroll Motors.

Furthermore, the amount of damages that Billingsley was owed under the settlement between the Honeycutts and Carroll Motors has already been determined by the jury. The jury found that Billingsley was entitled to recover $26,000 in actual damages under the contingency fee agreement. Accordingly, Billingsley is entitled to recover this amount from Carroll Motors because Carroll Motors wrongfully paid the Honeycutts, despite notice of Billingsley's interest. The trial court erred in granting a directed verdict on Billingsley's claim for actual damages against Carroll Motors.

## D. Attorney's Fees from Carroll Motors

▮ The jury also awarded Billingsley $26,000 for attorney's fees incurred in prosecuting his claim. The trial court properly reduced this amount to $9000. In his cross-appeal, Billingsley contends that Carroll Motors is also liable for this amount. We disagree. The Civil Practices & Remedies Code provides that a person may recover attorney's fees if the claim is for: (1) rendered services; (2) performed labor; (3) furnished material; (4) freight or express overcharges; (5) lost or damages freight or express; (6) killed or injured stock; (7) a sworn account; or (8) an oral or written contract. Tex. Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1997).

Billingsley's claim against Carroll Motors does not fall within any of these categories. Specifically, there was no contract between Billingsley and Carroll Motors; the contract was between Billingsley and the Honeycutts. The cause of action against Carroll Motors is more in the nature of a tort, *i.e.,* Carroll wrongfully paid Billingsley's interest in the suit to the Honeycutts after receiving notice of the interest. There being no contractual relationship between Billingsley and Carroll Motors, there can be no award of attorney's fees.

The trial court's directed verdict on the issue of attorney's fees against Carroll Motors was proper.

The trial court's judgment as between Billingsley and the Honeycutts is in all things affirmed. However, we reverse the trial court's take nothing judgment against Carroll Motors and render judgment that Billingsley recover $26,000 from Carroll Motors.

A majority of the justices of the Court voted to deny appellants' motion for rehearing en banc.