**Affirmed and Memorandum Opinion filed August 21, 2014.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-13-00201-CV

### IRADJ R. FARKOOSHI, INDIVIDUALLY, PARVAZ GROUP, INC. AND PARS SHELL, INC., Appellants

### V.

### AFISCO INTEREST, LLC F/K/A AFISCO INDUSTRIES, INC., Appellee

**On Appeal from the County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 1008111**

## MEMORANDUM OPINION

Appellants, Iradj R. Farkooshi, Parvaz Group, Inc., and Pars Shell, Inc. appeal a final judgment in a breach of contract suit, awarding damages and attorney's fees to Appellees, Afisco Interest, LLC f/k/a Afisco Industries, Inc. We affirm.

## I. BACKGROUND

On November 30, 2001, Afisco Industries, Inc. ("Industries") entered into a contract with Parvaz Group, entitled Petroleum Supply Agreement, to sell gasoline to Parvaz for a convenience store it operated, named New Era Food Mart, 10600 Cullen Blvd, Houston, Texas. Josiah Osei owned Industries. Farkooshi signed the Agreement on behalf of the Purchaser, Parvaz Group. The signature block and the date of the notarization on the Agreement show Farkooshi signed on behalf of Pars Shell, as Parvaz had ceased doing business in 2002. Farkooshi also signed a personal guaranty for performance under the Agreement. At no time prior to trial did appellants dispute the Agreement's execution, validity, or obligations owed thereunder.

Approximately one year after the execution of the Agreement, Industries changed its name to Afisco Interest LLC ("Interest"). Osei testified he transferred to Interest all the assets of Industries, including gasoline supply contracts. Using a "form letter" addressed "Dear Phillips Dealer," Osei notified all dealers of the name change, advising that payment must be made to the new entity. Appellants did not dispute receiving the notice, and they never objected to the change. Farkooshi testified Pars Shell ceased doing business in 2007 and that Harrisburg 5001 became the operating company at the 10600 Cullen location. Osei disputed he ever had notice of this change and there was no evidence of any assignment of the Agreement from Pars Shell to Harrisburg 5001. In any event, Interest continued to supply gasoline to the location.

In September 2011, appellants sent a check payable to Afisco Interest LLC for a shipment of gasoline—the check was not honored. On several prior occasions, appellants' checks to Interest had been dishonored. Nevertheless, Interest had continued to work with appellants, providing additional deliveries of

2

gasoline and extending further credit. However, contemporaneously with the dishonor of the September check, Interest learned appellants removed the credit-card terminals from the location. These terminals allowed customers to pay for purchases of gasoline with credit-cards, and the payments were sent directly to the supplier. Therefore, the amount appellants would owe Interest would be reduced by the amount of those credit-card payments.

The dishonor of the check, coupled with appellants' removal of the credit-card terminals, forced Interest to advise appellants that if they wanted further deliveries of gasoline, they would need to pay for them with certified funds. Requiring payment with certified funds is authorized under the terms of the Agreement.

Appellants did not dispute receiving the gasoline deliveries, nor did they dispute notice to pay with certified funds. Nevertheless, they did not honor the September check. Interest ceased supplying gasoline under the Agreement and it filed suit to recover for breach of contract, quantum meruit and to enforce Farkooshi's personal guaranty. Interest also asserted various theories of fraud against Farkooshi.

At the conclusion of a bench trial, the trial court signed a final judgment ordering that Afisco Interest, LLC recover from appellants, jointly and severally, $37,827.91, courts costs, pre- and post-judgment interest, and attorney's fees of $4,500 through trial, plus $5,000 for each stage of an appeal.

### III. ANALYSIS

In three issues, appellants contend the evidence is legally and factually insufficient to support the judgment; (2) there was a novation; and (3) Farkooshi was not liable under the personal guaranty.

3

## A.     Standard of Review

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We credit evidence that supports the judgment if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not. *Id*., at 827. "No evidence" or legal insufficiency challenges may be sustained only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810 (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362–63 (1960)).

When reviewing a factual-sufficiency challenge, we must assess all of the evidence and may not substitute our judgment for that of the trier of fact. When the challenge is to a finding on which the prevailing party had the burden of proof, we may reverse the judgment only if the challenged finding shocks the conscience or clearly shows bias, or if the favorable evidence is so weak as to make the judgment clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). If the challenge is to an adverse finding, or failure to find, on which the appellant had the burden of proof, we may reverse only if the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

4

When there are no findings of fact and conclusions of law, we must infer that the trial court made all findings necessary to support its judgment and will uphold those findings if they are supported by sufficient evidence. *Chenault v. Bank*, 296 S.W.3d 186, 198 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992)). A judgment must be upheld when it can be affirmed on any legal theory that finds support in the evidence. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

**B.    Was there sufficient evidence to support the judgment?**

Appellants argue there is insufficient evidence to support the judgment in favor of Interest because both Parvaz and Pars Shell were no longer in business in 2011 when the check for payment of gasoline was dishonored. They assert "Afisco Investment, LLC sued the wrong parties" and the "right" party which should have been sued was Harrisburg 5001. Appellants argue there is no evidence supporting the judgment against Parvaz, Pars Shell, and Farkooshi. Finally, appellants contend if Harrisburg 5001 is the "right" party, there is no basis for imposing personal liability against Farkooshi under his guaranty because it was "limited to Industries." We deal with appellants' arguments concerning the enforceability of Farkooshi's personal liability under the guaranty agreement in our discussion of appellants' third issue.

We note the record reflects there is no party named "Afisco Investment, LLC," but we treat this as a reference to Interest. Turning to the sufficiency of the evidence of breach of contract, Farkooshi testified he executed the Agreement between Parvaz and Industries, dated November 30, 2011, in February 2002, adding the name "Pars Shell" because Parvaz Group had ceased doing business in 2002. Thus, both Parvaz and Pars Shell were obligated. It is undisputed Interest

5

performed under the terms of the Agreement from 2001 through 2011 and Parvaz/Pars Shell accepted the benefits of that performance. Interest produced invoices for supplies of gasoline, including the one for September 2011, directed to Parvaz Group. There is no evidence that Parvaz/Pars Shell refused deliveries or gasoline or told Interest it was not the proper party to be billed. Further, there is no evidence that Farkooshi, on behalf of Parvaz or Pars Shell notified Interest of the existence of Harrisburg 5001. In fact, payments were made to Interest for gasoline provided at the 10600 Cullen location until September 2011 when Interest did not receive payment.

Farkooshi also testified Harrisburg 5001 assumed the obligations under the Agreement, continuing to purchase and pay for gasoline from Interest from 2007 through 2011. Farkooshi testified he advised Interest of the change from Parvaz/Pars Shell to Harrisburg 5001. Additionally, Farkooshi testified the change of name to Harrisburg 5001 "had to be disclosed" to Interest pursuant to the Agreement. However, Osei disputes receipt of any such notice. Osei also testified the Agreement prohibited any assignment of it without prior written consent— there was no evidence of any assignment.

Farkooshi admitted Interest supplied gasoline to the "New Era Food Mart" at 10600 Cullen, the same location referenced in the Agreement. Farkooshi did not complain of Interest's performance under the Agreement, and he did not object that invoices for payment of gasoline delivered under the Agreement were directed to Parvaz Group, rather than to Harrisburg 5001.

Interest provided evidence that it supplied gasoline pursuant to the Agreement and neither Parvaz Group nor Pars Shell paid for the gasoline supplies delivered to 10600 Cullen in September 2011. *See Loredana Enterprise, Inc. v. Rewards Network Services, Inc.*, No. 14-07-00118-CV, 2007 WL 4387418 at \*2

(Tex. App.—Houston [14th Dist.] Dec. 18, 2007, no pet.) (mem. op.) (concluding there was sufficient evidence of the terms of the contract and of party's failure to abide by them). Interest denied it had any knowledge that Parvaz Group ceased doing business and that Harrisburg 5001 assumed the obligations under the Agreement. Interest also provided evidence that appellants had not paid for the gasoline supplied to the location. *See Mays v. Pierce*, 203 S.W.3d 564, 576–577 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding breach-of-contract claim supported by evidence that the terms of the contract were breached).

We hold there is sufficient evidence to support the judgment.[1] Accordingly, we overrule Issue One.

**C.    Was there evidence of a novation?**

A novation occurs when the party alleging this affirmative defense establishes: (1) the validity of a prior obligation, (2) an agreement among all parties to accept a new contract, (3) the extinguishment of the prior obligation, and (4) the validity of the new agreement. *Securitycomm Group, Inc. v. Brocail*, No. 14-09-00295-CV, 2010 WL 5514333 at * 16 (Tex. App.—Houston [14th Dist.] Dec. 28, 2010, pet. denied) (mem. op.) (citing *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999); *In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 364 (Tex. App.—Beaumont 2008, orig. proceeding). It is the substitution of a new agreement between the same parties, or the substitution of a new party on an existing obligation so that only the new one may be enforced, which evidences novation. *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

---

[1] Interest's causes of action against the defendants included not only breach of contract but also quantum meruit. Because we have held there is sufficient evidence of breach of contract, we need not address quantum meruit.

> It can be inferred that a new contract is a novation of a previous agreement if the two are so inconsistent with one another that they cannot subsist together. *In re Bath Junkie*, 246 S.W.3d at 364. In the absence of such inconsistency, a new contract operates as a novation only if the parties to both contracts agree that the obligations of the new contract are to be substituted for, and operate as a discharge of, the obligations of the previous agreement.

*Securitycomm*, 2010 WL 5514333 at *16. Intent is not presumed—it must be clearly established from the evidence. *Id.*

Finally, novation is an affirmative defense which must be pleaded. *See* Tex. R. Civ. P. 94; *Honeycutt*, 992 S.W.2d at 576–77. Here, the issue of novation was tried by consent as Interest raised no objection to novation being addressed for the first time at trial. In any event, the burden was on appellants to prove the elements of novation and of the intent of the parties. *Id.*; *In re Bath Junkie*, 246 S.W.3d at 364.

Farkooshi testified that in 2000 the owner of the convenience store at 10600 Cullen was U-2 Stores; his wife was the owner of the property on which the convenience store was built. The Parvaz Group entity which executed the Agreement with Industries, f/k/a Interest for the supply of gasoline ceased doing business in 2002 and Pars Shell ceased operations in 2007. After 2007, he testified Harrisburg 5001 signed a new lease with U-2 Stores to conduct operations at the 10600 Cullen location, and to eventually purchase the property from it. The new lease was for five years, from February 2007 to June 2012. Farkooshi testified this change was "supposed to be disclosed to the fuel supplier" pursuant to the Agreement." He stated after 2007 Interest was aware Harrisburg 5001 had assumed the operations at 10600 Cullen because Interest accepted payments from it. This evidence does not establish novation as a matter of law, however, because there was also evidence to the contrary.

The only Agreement for the delivery of gasoline at the 10600 location was between Parvaz/Pars Shell and Industries, f/k/a Interest. Further, Osei testified that he never executed any contract to deliver gasoline to Harrisburg 5001, he did not know Harrisburg 5001 had signed a lease with U-2 Stores and he did not agree to any new contract. While the evidence supports appellants' claim that Interest accepted checks with the name "Harrisburg" on them as payment for deliveries of gasoline at 10600 Cullen, the name on the checks is not evidence Interest knew of or consented to a change of the Agreement and the creation of a new contract. Additionally, all of Interest's invoices for payment were directed to Parvaz Group, with no objection from appellants.

Further, there was no evidence from Farkooshi or Osei that either intended to enter into any new agreement and no evidence of any new agreement between the parties. *See Fulcrum Central v. AutoTester, Inc.*, 102 S.W.3d 274, 279 (Tex. App.—Dallas 2003, no writ) (concluding novation does not exist where there is no evidence of intent.) Rather, the evidence showed that appellants continued to receive deliveries of gasoline at the 10600 Cullen location pursuant to the Agreement, both before and after the alleged "novation." There was no evidence of any change to the manner of deliveries and payment, other than the name of the entity paying for the gasoline. Further, the 2001 Agreement prohibited the assignment of any rights under the Agreement without the "prior written consent of Seller [Afisco]." There was no evidence of any consent.

Thus, while there was proof of an existing and valid prior obligation between appellants and Interest, there was no evidence of any new agreement to enter into a new contract and no evidence of any agreement which extinguished the prior one. We hold appellants have not proven a novation as a matter of law. *CTTI Priesmeyer, Inc. v. K & O Ltd. Partnership*, 164 S.W.3d 675, 682–83 (Tex.

9

App.—Austin 2005, no pet.). Therefore, we overrule appellants' second issue.

## C.    Did trial court err in enforcing Farkooshi's personal guaranty?

A guaranty is an agreement which creates a secondary obligation whereby the guarantor confirms he is to be responsible for the debt of another and, if the party primarily obligated on the debt does not perform, the guarantor will be called upon to perform. *See Wasserberg v. Flooring Services of Texas, LLC*, 376 S.W.3d 202, 205 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *Tenneco Oil Co. v. Gulsby Eng'g, Inc.*, 846 S.W.2d 599, 605 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Recovery under a guaranty contract requires proof of (1) the existence and ownership of the guaranty, (2) the terms of the underlying contract by the holder, (3) the condition giving rise to the liability, and (4) the failure of the guarantor to perform. *Id*. (citing *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720–21 (Tex. App.—San Antonio 2004, no pet.) (citing *Marshall v. Ford Motor Co*, 878 S.W.2d 629, 631 (Tex. App.—Dallas 1994, no writ)); *Park Creek Assoc., Ltd. v. Walker*, 754 S.W.2d 426, 429 (Tex. App.—Dallas 1988, writ denied).

Relying on the rule of *strictissimi juris*, Farkooshi asserts there is no specific language in the guaranty making it a continuing one, or that the guaranty would apply to any entity other than Industries. Before we apply this rule, we must review the language of the guaranty. Because the interpretation of a guaranty is a question of law, we review *de novo*. *See Wasserberg*, 376 S.W.3d at 206 (citing *Gulf Ins. Co. v. Burns Motors, Inc*., 22 S.W.3d 417, 423 (Tex. 2000)).

Farkooshi's personal guaranty states he will:

> guarantee the due performance of Parvaz Group, Inc., the Purchaser under the Petroleum Supply Agreement … of each and all of the covenants, duties, and obligations set forth in and contained in said

Petroleum Supply Agreement … including but not limited to the prompt payment … of all sums…" under the Agreement.

This guaranty contains all the terms necessary for enforcement of it. *See* Tex. Bus. & Comm. Code Ann. § 26.01 (a) (West 2002). Thus, the unambiguous and unlimited terms of the guaranty obligate Farkooshi to guarantee the "due performance" of Parvaz/Pars Shell under the Agreement. It is "absolute and unconditional," requiring "no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor. Such a guaranty is also called a "guaranty of payment". *United States v. Vahlco Corp.*, 800 F.2d 462, 466 (5th Cir. 1986) (enforcing continuing guaranty of payment depends on terms of the particular agreement—only changes in terms of guaranty discharges the obligation); *see also Ford v. Darwin*, 767 S.W.2d 851, 854–55 (Tex. App.—Dallas 1989, writ denied). Therefore, unless there is limiting language, which is not present here, Farkooshi is jointly and severally liable on the debt and may be sued in a manner similar to the principal debtor. *See Material Partnerships, Inc. v. Ventura*, 102 S.W.3d 252, 265 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (Frost, J., concurring) (citing *Cox v. Lerman*, 949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.], no pet.) (other citations omitted)).

On this point, Farkooshi's reliance on *Garfield Trust Co. v. Teichmann*, 24 N.J. Super. 519, 527, 95 A.2d 18 (App. Div. 1953) is misplaced. There the guaranty was not enforced against the guarantors because the specific terms obligated the guarantors to be responsible "only for loans and credit extended directly to Paramount from Garfield." *Id.*, 95 A.2d at 22. Because the loans were made "not to Paramount, but to Roco-Tex", the guaranty could not be enforced. *Id.* Here, Interest sought to enforce Farkooshi's personal guaranty of performance under the terms of the Agreement, thereby obligating Farkooshi on his personal guaranty.

Next, Farkooshi contends he is not obligated because of the name change from Industries to Interest and that Industries "went out of business in 2002." The only evidence is Industries did not formally terminate its operations until November 2011. Farkooshi did not dispute he continued to receive deliveries of gasoline pursuant to the Agreement, and prior to September 2011, checks were made to Afisco Interest. *See Wasserberg*, 376 S.W.3d 202, 207 (holding entity existed and indebtedness incurred, regardless of name change).[2]

Finally, in another challenge to the enforceability of the guaranty agreement, Farkooshi argues he never agreed to guarantee "purchases by Harrisburg 5001." The language of the guaranty agreement, however, requires him to guarantee the "due performance of Parvaz Group [Pars Shell] under the Agreement . . .", including payment. The terms are clear that Farkooshi agreed to guarantee payment for the supply of gasoline at 10600 Cullen. As noted above, Interest provided gasoline to Parvaz/Pars Shell at 10600 Cullen under the Agreement. We have held there was no evidence of a novation; specifically, there was no evidence the parties intended to extinguish the Agreement between Parvaz/Pars Shell and accept a new contract with Harrisburg 5001 as the purchaser.

Therefore, we conclude there is no evidence of any term or condition which discharges Farkooshi's performance under his personal guaranty. Accordingly, we overrule appellants' third issue.

## IV. CONCLUSION

Because we hold there was sufficient evidence to support the trial court's final judgment, there was no evidence of a novation, and there is no limitation or condition on Farkooshi's personal guaranty, we overrule appellants' three issues

---

[2] Furthermore, Farkooshi did not plead that the change in fuel supplier and payee from Industries to Interest was a "material alteration" of the underlying Agreement.

and affirm the judgment of the trial court.


/s/     John Donovan
Justice


Panel consists of Justices McCally, Busby, and Donovan.