

# NUMBER 13-21-00459-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**IRON TIGGA, LLC AND**
**ABRAHAM QUINTANILLA III,**                                    **Appellants,**

**v.**

**LAW OFFICES OF**
**DAVID W. SHOWALTER, LLP,**                                    **Appellee.**

---

## On appeal from the 148th District Court
## of Nueces County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Silva**
**Memorandum Opinion by Justice Longoria**

Appellants Iron Tigga, LLC and Abraham "A.B." Quintanilla III appeal the trial court's denial of their motion to dismiss a suit brought by appellee Law Offices of David W. Showalter, LLP (Showalter) concerning the payment of certain legal fees. By five issues, appellants contend that Showalter's claims should have been dismissed under

the Texas Citizens Participation Act (TCPA). Because we agree, we reverse and remand.

## I.  BACKGROUND

### A.  2007 Suit and Post-Judgment Proceedings

Quintanilla, Andrew Maes, Alex Ramirez, and Alex's brother Rolando Ramirez were members of the "Kumbia Kings," a popular music group formed in the late 1990s. In 2007, Maes and the Ramirez brothers sued Quintanilla[1] for breach of contract, breach of fiduciary duty, and fraud, alleging that they were each entitled to a portion of the profits earned by the group from its founding until 2003 (the underlying suit or 2007 suit). After a bench trial in November of 2012, the 319th District Court found against Maes but in favor of the Ramirezes, awarding each brother $393,266 in damages, plus pre- and post-judgment interest. *See Maes v. Quintanilla*, No. 13-13-00005-CV, 2015 WL 1957548, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 30, 2015, pet. denied) (mem. op.) (affirming judgment).

Showalter represented all three plaintiffs in the 2007 suit. At the 2012 bench trial, he testified that $65,000 was a reasonable and customary fee for the services his firm had provided "through trial and post[-]trial motions," that $18,000 would be a reasonable fee in the event of an appeal to this Court, and that $20,000 would be a reasonable fee in the event of an appeal to the Texas Supreme Court. Showalter further testified that the three plaintiffs had entered into a contingent fee agreement with him and that "another reasonable way to calculate attorney's fees is 40 percent of the amount recovered; and if there's an appeal, an extra five percent." Ultimately, in addition to damages, the

---

[1] The 2007 suit was brought against appellants Quintanilla and Iron Tigga, LLC, Quintanilla's solely-owned company. Both Iron Tigga, LLC, and Quintanilla were named as defendants in the instant suit and both are parties to this appeal. We refer to appellants collectively as Quintanilla.

November 2012 final judgment awarded the Ramirez brothers "[r]easonable and necessary attorney's fees in the amount of $65,000," plus conditional appellate fees in the amounts of $18,000 and $20,000, in accordance with Showalter's testimony.[2]

Showalter continued to represent the Ramirez brothers in post-judgment proceedings and collection efforts. In 2013, he successfully sought an order in bankruptcy court declaring that the 2012 judgment debt was not dischargeable by Quintanilla. And in 2016, pursuant to a motion filed by Showalter on behalf of the Ramirezes, the trial court appointed a receiver "with the power and authority to take possession of all leviable property of" Quintanilla. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b)(3) (stating that a court may "appoint a receiver with the authority to take possession of [a judgment debtor's] nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment").

At some point in 2018, the Ramirez brothers hired attorneys Bianca Medina and Kim Frost to represent them. On October 30, 2018, Medina and Frost, on behalf of the Ramirezes, applied to 319th District Court for a writ of garnishment to be directed to Quintanilla's father, Abraham Quintanilla Jr. (Abraham). The application alleged that Quintanilla does not possess property in Texas subject to execution sufficient to satisfy the judgment, but that Abraham "is indebted to [Quintanilla] by reason of a contractual relationship which exists between [Abraham] and [Quintanilla]." The court granted the request and the Nueces County Clerk issued the writ, which forbade Abraham from paying any debt he owed to Quintanilla pending further order of the court.

---

[2] According to an Abstract of Judgment issued by the Nueces County Clerk on January 4, 2018, the total amount owed by Quintanilla under the November 2012 judgment as of that date, including interest, was $1,082,753.82.

3

**B.    Instant Suit**

On June 3, 2021, Showalter filed the instant suit in the 148th District Court against Quintanilla and the Ramirez brothers, alleging that the Ramirezes, "in coordination with all Defendants, fired [Showalter] immediately before an out-of-court settlement and have since refused to pay the legal fees owed under the contract." The suit asserted a claim for breach of contract against the Ramirez brothers, pointing to the following provision contained in a fee agreement signed in 2006 by Showalter and both Ramirezes:

> In consideration of the services rendered and to be rendered by our attorneys in the prosecution of our said claim for damages [against Quintanilla], [w]e here and now set over and assign to our said attorneys a 33-1/3% interest in our said causes of action in the event settlement is made before suit is filed; and a 40% interest in the event suit is filed and/or tried and settlement is made or judgment paid without an appeal; and a 45% interest in the event suit is appealed to the appellate courts.

Showalter further asserted that Quintanilla intentionally interfered with this fee agreement "by offering a covert settlement with the Ramirez Defendants outside of court in which [Showalter] received no notification of the same, and consequently, no compensation for his efforts in the underlying lawsuit." Showalter alleged that "[a]fter nearly a decade of litigation, [Quintanilla] knew or had reason to know of [Showalter]'s contract with the Ramirez Defendants." Finally, Showalter claimed that Quintanilla engaged in a civil conspiracy with the Ramirez brothers to "unlawfully deprive [him] of his 45% ownership of settlement proceeds."

**C.    TCPA Motion to Dismiss**

On August 25, 2021, Quintanilla filed a motion to dismiss Showalter's suit pursuant to the TCPA, contending that the suit is based on or in response to Quintanilla's exercise of the right of petition and that Showalter cannot produce clear and specific evidence to support his claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(a). Specifically, the

4

motion alleged that the TCPA applied to Showalter's suit because the claims raised therein implicated Quintanilla's "making or submitting of communications in the form of written statements, case filings, settlement agreements and other documents in or pertaining to judicial proceedings." *See id.* § 27.001(4)(A)(i).

The motion acknowledged that on June 26, 2019, both Abraham and Quintanilla entered into a "Full and Final Settlement and Release Agreement and Confidentiality Agreement" with the Ramirez brothers which settled all of the claims made in the 2007 lawsuit (and adjudicated in the 2012 judgment) as well as in the 2018 writ of garnishment proceeding. The motion stated that, pursuant to the settlement agreement, a check for $750,000 was delivered to Medina, and the Ramirezes filed an agreed motion to vacate the writ of garnishment and released all of their claims.[3] The motion argued, however, that the settlement was not "covert," as Showalter alleged, because it arose out of "public judicial proceedings" which were "pending . . . at the time of the settlement." The motion further observed that, in section D.2 of the settlement agreement, the Ramirez brothers expressly represented as follows:

> Plaintiffs, [the Ramirez brothers], warrant and represent that Plaintiffs, [the Ramirez brothers], have not assigned, authorized or transferred (in any way, whether directly or indirectly) any claims, demands, suits, causes of action, charges, or grievances of any kind or character, which Plaintiffs, [the Ramirez brothers], had or may have had prior to and including the Effective Date against Defendant, [Abraham], and/or Debtor/Defendant, [Quintanilla].

---

[3] The motion to dismiss further noted that, on January 11, 2021, Medina filed an interpleader in the underlying suit in which she sought permission to deposit $65,000 in the registry of the court. The interpleader stated that $32,500 "was held from the settlement proceeds" as to each Ramirez brother "based on an alleged claim to the funds" by Showalter, but that each brother had directed Medina "not to tender any of the funds" to Showalter. Medina stated in the interpleader that she "has no claim or any interest" in those funds. The motion to dismiss also noted that, on March 4, 2021, Abraham filed a plea in intervention in the underlying 2007 suit "to assert his interest in protecting the confidentiality of the [settlement agreement] and in preventing its release to non-parties with no interest in its content, or with adverse interests to [Abraham]." Copies of Medina's interpleader and Abraham's plea in intervention were attached to the motion to dismiss.

The TCPA motion to dismiss was accompanied by several pieces of evidence, including an affidavit by Quintanilla supporting the allegations made in the motion. In the affidavit, Quintanilla denied that he ever knew of, or interfered with, any contract between the Ramirezes and Showalter. He stated that he had not communicated directly with the Ramirez brothers in over nine years, and that he had never communicated directly with Medina or Frost. He averred that "[a]ny and all settlement communications . . . were handled by my attorney at the time." Also attached to the motion to dismiss was a sealed copy of the settlement agreement between Quintanilla and the Ramirezes.

Showalter filed a response to the motion to dismiss contending that the TCPA does not apply to his suit because (1) it is based on Quintanilla's "conduct" rather than a "communication," and (2) any "communications that may be theoretically encompassed by [his] lawsuit" were made "outside of any judicial proceeding." Showalter's response further argued that, even if the TCPA applied to his claims, he produced clear and specific evidence of a prima facie case for each of his causes of action. He included an affidavit in which he averred that he "first became aware of being discharged" as counsel for the Ramirez brothers "in June and July, 2019." He stated that he did not learn of the settlement agreement until October 28, 2020, when he received a letter from an attorney representing Medina. Showalter also averred as follows:

> As a result of the secretive nature of the settlement while I was still the attorney of record for the Ramirez [b]rothers, the amount of the judgment was significantly compromised and reduced. Even at the reduced amount, and due to the secretive nature of the settlement, I was not informed and therefore did not receive my the 45% [sic] of the judgment I was entitled to under the contract. This is true despite the ten years spent litigating this case on a contingent fee contract. To date, I have not received any money in exchange for my efforts in the underlying lawsuit. . . .
>
> I believe my aggressive pursuit of the judgment informs that the settlement with the Ramirez [b]rothers was entered into behind my back because

6

[Quintanilla] knew I would never advise my clients to resolve their case for anything less than the full amount of the judgment. I engaged in aggressive post[-]judgment discovery upon the assets of [Quintanilla], clearly putting them on notice and giving them the motivation to avoid me in settling the case. . . .

The settlement agreement reached in the underlying suit was reached without my knowledge and without the knowledge and approval of the receiver . . . . The receiver would never have consented to a settlement of this kind. Had the settlement been reached without the tortious interference of the contract, I would have required and secured the full amount of the judgment by collection and I would have taken 45% of the same as required under the contract along with expenses.

Quintanilla filed a reply in which he argued that his entrance into the settlement agreement and payment to the Ramirez brothers "cannot be the proximate cause of the Ramirez [b]rothers'·subsequent alleged breach and purported failure to pay [Showalter his] contingency fee." Showalter filed a sur-reply in which he argued that Quintanilla's actions were, in fact, a proximate cause of his injury because Quintanilla was obliged "to distribute funds through the receivership" according to the order appointing the receiver, which stated in relevant part:

It is further ORDERED that [Quintanilla] continue, until the judgment in this cause is fully paid, to turn over to Receiver at Receiver's address all checks, cash, securities, promissory notes, documents of title, and contracts within three days of [Quintanilla's] receipt and possession of such property if, as, and when [Quintanilla] come[s] into receipt and possession of any such property.[4]

Quintanilla asserted in a sur-response that the receiver's authority was "clearly limited to the assets of [Quintanilla]," not his debts, and "the consideration used to settle the

---

[4] Showalter attached to his sur-reply an affidavit by the receiver attesting that he sent notice of his appointment and a copy of the order appointing him to Quintanilla and that Quintanilla signed the return receipt. The receiver stated that, to his knowledge, the receivership was never terminated. However, the trial court sustained Quintanilla's objections to the receiver's affidavit on the basis that it was not timely filed, and Showalter does not challenge that ruling on appeal. Therefore, we do not consider the receiver's affidavit in our analysis.

7

judgment did not come from assets of [Quintanilla]," but rather came from Abraham. Quintanilla further argued that the receivership had been rendered moot because the 2012 judgment was satisfied.

At a hearing on November 19, 2021, the trial court heard argument on the motion to dismiss. Quintanilla's counsel stated that Abraham funded the settlement payment, on behalf of himself and his son, in order to extinguish the writ of garnishment. Quintanilla's counsel further stated that the settlement agreement was reached only after Showalter had been discharged as the Ramirez brothers' counsel. Showalter's counsel disagreed and claimed that, in fact, Showalter "did not get discharged until the settlement happened." According to counsel, "[o]n the date of the settlement [Showalter] received correspondence from the Ramirezes discharging him"; however, Showalter was not informed of the existence of the settlement agreement until Medina contacted him in late 2020, and he was not aware of the amount of the settlement payment until he filed the instant suit.[5] Showalter's counsel conceded that, when the settlement was approved by the 319th District Court, "the receivership would have been terminated."

The trial court denied Quintanilla's motion to dismiss by written order dated December 7, 2021, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(12).[6]

---

[5] After the hearing but before the court's ruling, Showalter filed an amended petition adding Medina as a defendant.

[6] On February 2, 2022, after the appeal was perfected but prior to the filing of briefs, Quintanilla's appellate counsel filed an affidavit with the trial court attesting that the presiding judge sent emails to the attorneys dated November 22, December 1, and December 7, 2021, and including copies of those emails. In the emails, the trial judge stated that he found *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)—a case cited by Showalter—to be "instructive," and that he would be denying the TCPA motion to dismiss. The emails further stated as follows:

> Both the *Berry* [*v. Nueces County*, No. 13-05-383-CV, 2006 WL 1280901, at *1 (Tex. App.—Corpus Christi–Edinburg May 11, 2006, pet. denied) (mem. op.)] and *Raub* [*v. Gate*

8

## II.    Discussion

Quintanilla presents five issues on appeal, all of which challenge the trial court's denial of his TCPA motion to dismiss.[7] We address the issues together.

## A.    Applicable Law and Standard of Review

The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015)

---

*Guard Services, L.P.*, No. 13-15-00097-CV, 2017 WL 2570042, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 30, 2017, no pet.) (mem. op.)] cases leave open the issue of "a case in which the parties themselves arrange a secret settlement in order to defraud their own attorneys." . . . [T]he function of discovery is to flesh out the details of such allegations, if any. Likewise, if the discovery process reflects no evidence of fraud, the matter may be revisited.

Pursuant to Quintanilla's request, the appellate record was supplemented to include counsel's affidavit and the accompanying emails.

In his brief, Showalter argues that we should not consider the emails because they are not properly part of the record. We assume, but do not decide, that the emails are not properly part of the appellate record, and we do not consider them in our analysis.

[7] The issues are presented as follows in Quintanilla's brief:

1.      Whether the trial court committed reversible error when it denied [Quintanilla's] TCPA Motion to Dismiss relying solely on [*Honeycutt*] . . . and did not follow the holdings in [*Berry*] and [*Raub*].

2.      Whether the trial court committed reversible error in holding that because [sic], in theory, a settling defendant may be liable to the former counsel of the settling plaintiff if there is evidence "the parties themselves arrang[ed] a secret settlement in order to defraud their own attorneys" and by then seemingly finding that [Quintanilla] entered into a "secret settlement" despite there being no evidence submitted by Showalter of any "secret settlement."

3.      Whether the trial court committed reversible error in denying [Quintanilla's] TCPA motion because discovery might reveal evidence of a "secret settlement" or other facts providing prima facie evidence of each element of Showalter's causes of action.

4.      Whether the trial court committed reversible error by failing to analyze whether [Quintanilla's] affirmative defense of justification compelled dismissal of Showalter's claims.

. . . .

[5.]    Whether in the absence of clear and specific evidence establishing a prima facie case for each element of Appellee's claims against [Quintanilla], it was error for the trial court to deny the TCPA Motion to Dismiss and to refuse to award [Quintanilla his] attorneys' fees and expenses.

The analysis and arguments in the brief do not correspond to the issues presented. We will endeavor to address every issue fairly raised, supported by argument, and necessary to the disposition of the appeal.

(orig. proceeding). A party seeking dismissal under the TCPA has the initial burden to show that "the legal action is based on or is in response to . . . the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1). If the movant meets its initial burden, then the plaintiff must establish by "clear and specific evidence a prima facie case for each essential element of the claim in question" to avoid dismissal. *Id.* § 27.005(c). Even if the plaintiff makes this showing, the trial court must nevertheless dismiss the action "if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d).

Our review of a ruling on a TCPA motion to dismiss is de novo. *Entravision Commc'ns Corp. v. Salinas*, 487 S.W.3d 276, 281 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied); *Hicks v. Grp. & Pension Adm'rs, Inc.*, 473 S.W.3d 518, 526 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.).

**B.    Exercise of Right to Petition**

We first address whether the TCPA applies to the claims at issue. Quintanilla alleged that Showalter's claims against him were "based on or . . . in response to" his exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(B). "Exercise of the right to petition" is defined in the statute as, among other things, "a communication in or pertaining to . . . a judicial proceeding." *Id.* § 27.001(4)(A)(i). Courts have held that, in this context, a "judicial proceeding" must be "actual" and "pending." *Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 220 (Tex. App.—Austin 2017, no pet.); *Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 728 (Tex. App.—Dallas 2016, pet. denied). "'Communication' includes the making or

10

submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1); *see Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("Almost every imaginable form of communication, in any medium, is covered."). "Pertain" is not defined in the statute but may mean "to relate directly to; to concern or have to do with." BLACK'S LAW DICTIONARY (11th ed. 2019).

As noted above, Showalter's live petition at the time of the hearing alleged that Quintanilla interfered with his fee agreement with the Ramirez brothers "by offering a covert settlement" to the Ramirezes without notifying Showalter and without "compensat[ing him] for his efforts in the underlying lawsuit."[8] Showalter further alleged that, "[t]o accomplish the object of their agreement, Defendants confidentially exchanged money or property to satisfy the underlying judgment and intentionally acted to conceal the effects of their actions from [Showalter]." Showalter concedes that "almost any kind of statement made by a lawyer to a court during a lawsuit" would qualify as an "exercise of the right to petition" under the statute, but he contends that "[a]ny communications made in connection with" the settlement negotiations here "were not made as part of or in connection with any judicial proceeding, but rather in the course of cutting a secret, back-room deal." He asserts that "[a] person cannot render their wrongdoing immune from judicial review merely by mentioning it to a court, after the fact."

We find that the broad statutory language encompasses Showalter's claims against Quintanilla. It is undisputed that the 2019 agreement was signed by Abraham,

---

[8] In his amended petition, Showalter additionally argued that Quintanilla was "aware that the 319th District Court had appointed a receiver over all of the [Ramirezes'] assets. Nevertheless, all of the Defendants acted in derogation of that court order and the authority of the receiver."

Quintanilla, and the Ramirez brothers, and that it settled claims which were then pending in actual, ongoing judicial proceedings. It is also undisputed that the settlement agreement was reviewed and approved of by the presiding judge of the 319th District Court. Thus, the settlement agreement constituted a "communication in a judicial proceeding." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i). Showalter emphasizes that Abraham sought to ensure the confidentiality of the agreement, and he notes that the agreement was initially filed under seal.[9] But the definition of "communication" in the TCPA does not require that the statement or document at issue be made or submitted publicly. Under the very broad statutory language, even a "secret, back-room deal" may constitute an "exercise of the right to petition" if it is filed with the court in an active proceeding. *See id.*

On appeal, Showalter contends that there "must also be more than a tangential connection between the claim being made and the communication." He cites *Winstead PC v. Moore*, in which the Dallas Court of Appeals held that the TCPA did not apply to a claim based on alleged misrepresentations made by a law firm to the plaintiff that the firm "had met its legal standard of care in preparing" certain documents for submission to the Securities and Exchange Commission (SEC). 633 S.W.3d 200, 204 (Tex. App.—Dallas 2021, pet. filed). The court held that the alleged misrepresentations were "too remote from the SEC's review of those documents to constitute 'communication[s] in connection with an issue under consideration or review by a . . . governmental body.'" *Id.* (applying TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(B) (stating that "exercise of the right to petition" includes "a communication in connection with an issue under consideration or review by

---

[9] The agreement was later unsealed and filed with the trial court in the instant suit.

12

a . . . governmental body")). Here, the relationship between the settlement negotiations and agreement and the judicial proceedings which it settled was more than merely tangential. At the very least, the settlement negotiations and agreement between Quintanilla and the Ramirezes constitute "communications . . . pertaining to" the pending judicial proceedings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i); *see also Jetall Cos. v. Johanson*, No. 01-19-00305-CV, 2020 WL 6435778, at *3 (Tex. App.— Houston [1st Dist.] Nov. 3, 2020, no pet.) (mem. op.) (concluding that communications which "culminated in the execution of" a written settlement agreement "pertain[ed] to" the lawsuit which the agreement settled).

Showalter's claims against Quintanilla are "based on or . . . in response to" "a communication in or pertaining to . . . a judicial proceeding." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001(4)(A)(i), 27.005(b)(1)(B). Therefore, the TCPA applies.

## C. Clear and Specific Evidence of Prima Facie Case

Having concluded that the TCPA applies to the claims at issue, we proceed to consider whether Showalter produced clear and specific evidence to establish a prima facie case as to each element of those claims. A "prima facie case," as used in the TCPA, means "evidence that is legally sufficient to establish a claim as factually true if it is not countered." *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). It represents the "minimum quantity of evidence necessary to support a rational inference that the allegation of fact is true." *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 688 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). In the context of the TCPA, "clear" has been interpreted to mean "unambiguous," "sure," or "free from doubt," while "specific" has been interpreted to mean "explicit" or "relating to a particular named

13

thing." *In re Lipsky*, 460 S.W.3d at 590.

Against Quintanilla, Showalter asserted claims of tortious interference with an existing contract and civil conspiracy. The essential elements of a tortious interference claim are: (1) the existence of a valid contract subject to interference; (2) the defendant willfully and intentionally interfered with the contract; (3) the interference proximately caused the plaintiff's injury; and (4) the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002)). To establish a civil conspiracy claim, a plaintiff must establish that: (1) a combination of two or more persons; (2) sought to accomplish an object or course of action; (3) reached a meeting of the minds on the object or course of action; and (4) took one or more unlawful, overt acts in pursuance of the object or course of action; (5) which proximately caused damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).

As noted, Showalter stated in his affidavit that Quintanilla knew of his contingency fee arrangement with the Ramirezes because Quintanilla was present at the 2012 trial, during which Showalter offered testimony to that effect. On appeal, Showalter cites *Honeycutt v. Billingsley*, among other cases, for the proposition that "a lawyer [may] recover when a case in which he had a contingent fee interest was settled behind his back without his knowledge, by parties who were aware of his interest." 992 S.W.2d 570 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *see Seiter v. Marschall*, 147 S.W. 226, 228–29 (Tex. 1912); *Galveston, Harrisburg & San Antonio Ry. Co. v. Ginther*, 72 S.W. 166, 167 (Tex. 1903); *Travelers Fire Ins. v. Steinmann*, 276 S.W.2d 849, 851 (Tex. App.—Dallas 1955, writ ref'd n.r.e.); *Groves-Barnes Lumber Co. v. Freeman*, 33 S.W.2d 218,

219 (Tex. App.—Texarkana 1930, no writ); *see also Hagood v. Madhavan Pisharodi, M.D., P.A.*, No. 13-17-00672-CV, 2019 WL 6795869, at *4 (Tex. App.—Corpus Christi-Edinburg Dec. 12, 2019, no pet.) (mem. op.); *GEICO Choice Ins. v. Stern*, No. 01-18-00013-CV, 2019 WL 3819518, at *4 (Tex. App.—Houston [1st Dist.] Aug. 15, 2019, no pet.) (mem. op.); *Mallory v. Arctic Pipe Inspection Co.*, No. 01-12-00979-CV, 2014 WL 701123, at *5 (Tex. App.—Houston [1st Dist.] Feb. 20, 2014, pet. denied) (mem. op.).

In *Honeycutt*, a woman was injured in a car accident and signed a contract with attorney Billingsley to represent her in a suit arising out of the accident. 992 S.W.2d at 573. The contract stated that, as compensation, Honeycutt would assign to Billingsley "an undivided interest in her claim" of "40% if a collection or settlement was made after suit was filed." *Id.* The contract also stated that neither the client nor the attorney was to make a settlement without the other's consent. *Id.* Later, the parties signed an agreement referring Honeycutt's claims from Billingsley to another attorney, Jensen. *Id.* at 574. The referral agreement stated that Billingsley was entitled to forty percent of the fees to which he was entitled under the original agreement and that Jensen was entitled to sixty percent. *Id.* at 575. The following year, Jensen withdrew from the case and Honeycutt retained new counsel without a referral agreement, but she did not advise Billingsley. *Id.* Billingsley later intervened in Honeycutt's case, asserting that he had a forty percent interest in her claim under the original agreement. *Id.* The jury found that Honeycutt failed to comply with the original fee agreement and that Billingsley was entitled to $13,000 in damages. *Id.* at 576. The First Court of Appeals held that there was legally and factually sufficient evidence to support the jury's findings that the affirmative defenses of novation and accord and satisfaction did not excuse Honeycutt's breach of contract. *Id.* at 577–80

(noting that Billingsley was the "only attorney ever given an express assignment" of Honeycutt's claim, and that he testified the referral agreement "was not intended to discharge the contingency fee agreement").

*Honeycutt* is distinguishable. First, there is no indication that Showalter and the Ramirez brothers agreed, as part of their fee arrangement, that neither party was to make a settlement without the other's consent. Second, and more importantly, the question at issue in *Honeycutt* was whether the attorney, Billingsley, could recover against his former client, Honeycutt, who was a party to the contingency fee agreement. Thus, to the extent that *Honeycutt* holds "a lawyer [may] recover when a case in which he had a contingent fee interest was settled behind his back without his knowledge," it holds only that the attorney may recover *from the former client* in that situation. It does not establish that the attorney may recover his fees from the *defendant* in the lawsuit when that defendant settles its claims with the attorney's former client, regardless of whether the defendant knew of the contingency fee arrangement.

In Texas, a lawyer's rights based on a contingent fee contract are "wholly derivative from those of his client." *Dow Chem. Co. v. Benton*, 357 S.W.2d 565, 567 (Tex. 1962). Thus, "if an attorney hired on a contingent-fee basis is discharged without cause before the representation is completed, the attorney may seek compensation in quantum meruit or in a suit to enforce the contract by collecting the fee from any damages the client subsequently recovers." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006); *see Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969); *Rocha v. Ahmad*, 676 S.W.2d 149, 156 (Tex. App.—San Antonio 1984, writ dism'd). But the party against whom the attorney may sue for this breach is his former client, not the opposing

16

party in the underlying litigation. *See Mandell & Wright*, 441 S.W.2d at 847 (allowing attorney to sue client after termination); *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70–71 (Tex. App.—Fort Worth 2003, no pet.); *see also Raub v. Gate Guard Servs., L.P.*, No. 13-15-00097-CV, 2017 WL 2570042 (Tex. App.—Corpus Christi–Edinburg Mar. 30, 2017, no pet.) (mem. op.); *Berry v. Nueces Cnty.*, No. 13-05-383-CV, 2006 WL 1280901 (Tex. App.—Corpus Christi–Edinburg May 11, 2006, pet. denied) (mem. op.).

This Court has previously held in two memorandum opinions that an attorney lacked standing to sue his former client's adversary for contingency fees owed by the former client. *See Raub*, 2017 WL 2570042, at *3; *Berry*, 2006 WL 1280901, at *3. Showalter notes that, in both of those cases, we specifically distinguished the facts therein from a hypothetical situation "in which the parties themselves arrange a secret settlement in order to defraud their own attorneys." *Raub*, 2017 WL 2570042, at *3; *Berry*, 2006 WL 1280901, at *3 (citing *Ginther*, 72 S.W. at 167). Showalter suggests that this is one of those situations.

We disagree. Even assuming that a defendant could theoretically be liable to the plaintiff's former attorney by settling their case in certain circumstances, Showalter's evidence does not establish a prima facie case supporting that theory. Specifically, there is no clear and specific evidence that Quintanilla sought to defraud Showalter by settling his claims against the Ramirezes. Although Showalter testified at trial in the underlying case that he had a contingency fee agreement with the Ramirezes, he did not testify that the Ramirezes had assigned a portion of their claim to him. There is no evidence in the record, clear and specific or otherwise, which would tend to establish that Quintanilla

17

knew that Showalter owned an interest in the Ramirezes' claim. To the contrary, the Ramirez brothers explicitly affirmed in the settlement agreement that they had not assigned any of the claims being settled to any other party.

Moreover, to prove the second element of a tortious interference claim, the defendant must show that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Cmty. Health Sys. Prof'l Servs. Corp.*, 525 S.W.3d at 689 (quoting *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992)). There is no evidence in the record, clear and specific or otherwise, indicating that Quintanilla intended for the Ramirezes to dishonor their contingency fee agreement with Showalter, or that Quintanilla believed the Ramirezes were substantially likely to do so as a result of the settlement. Instead, the record reflects that Quintanilla promptly paid the amount he owed under the settlement agreement, which actually exceeded the principal amount of the damages awarded in the 2012 judgment.

For the foregoing reasons, we conclude Showalter failed to meet his burden to produce clear and specific evidence supporting a prima facie case on his tortious interference claim. Further, because Showalter's civil conspiracy claim is dependent on a finding that Quintanilla committed an "overt, unlawful" act by negotiating and entering into a settlement agreement with the Ramirez brothers, we further conclude that Showalter failed to meet his burden to produce clear and specific evidence supporting a prima facie case on that claim. *See First United Pentecostal Church of Beaumont*, 514 S.W.3d at 222; *see also Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140 (Tex. 2019) (noting that liability for civil conspiracy "depends on injury from the underlying

18

tort, not the conspiracy itself"). We need not address whether Quintanilla established his affirmative defenses. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); TEX. R. APP. P. 47.1. Quintanilla's issues on appeal are sustained.

### III. CONCLUSION

We reverse the trial court's judgment. The cause is remanded with instructions to grant Quintanilla's TCPA motion to dismiss; to award court costs and attorney's fees to Quintanilla, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1); to consider whether to award sanctions to Quintanilla, *see id.* § 27.009(a)(2); and for further proceedings consistent with this opinion.

NORA LONGORIA
Justice

Delivered and filed on the
20th day of October, 2022.